# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT
CIVIL ACTION NO.:

_____

EXRO TECHNOLOGIES INC.,
12-21 Highfield Circle S.E.
Calgary, Alberta T2G                                    :

                                                        :

                              Plaintiff,                   **RECEIVED**

                                                        :          2/15/2022       HG

               v.                                       :

EPROPELLED INC.                                         :
Serve:  Corporation Service Company                     :
        85 State Street
        Boston, MA 02109
                                                        :
                              Defendant.
_____ :

## COMPLAINT

Plaintiff, EXRO TECHNOLOGIES, INC. (hereinafter, "**Exro**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files this Complaint against Defendant EPROPELLED, INC. (hereinafter  "**ePropelled**" or "**Defendant**") and alleges the following:

## INTRODUCTION

1.      This litigation concerns the bad faith tactics of ePropelled in publishing an untrue, libelous and defamatory statement about Exro in a press release in a transparent attempt to harm Exro and gain a market advantage.

2.      Exro and ePropelled both have technology targeting the mobility electrification segment.  Due to the rapidly-increasing demand for innovation and the fundraising and investing needed to fulfill such demand, the clean power electronics industry is highly competitive.

3.      After a few private communications, in which ePropelled raised purported concerns about similarities between Exro's technology and a patent owned by ePropelled and Exro

responded, ePropelled launched a surprise—and unsupported—press release that claimed that Exro never responded to its initial letter.  This statement was completely false and is plainly contradicted by the parties' written correspondence.

4.      This false public statement had the intended effect:  Exro has suffered significant damage in the form of falling stock prices and decreased investor and market confidence.

5.      ePropelled must be held accountable for its tortious conduct and should be required to compensate Exro for the damage it has deliberately, and without justification, caused to Exro.

## THE PARTIES

6.      Exro is, and has at all relevant times been, a foreign corporation organized under the laws of the Province of British Columbia, Canada, with a principal place of business located at 12-21 Highfield Circle S.E., Calgary, Alberta T2G.

7.      ePropelled is, and has at all relevant times been, a foreign corporation organized under the laws of the State of Delaware, with a principal place of business located at 116 John Street, Suite 205, Lowell, Massachusetts 01852.

## JURISDICTION

8.      This Court has jurisdiction over this matter in accordance with Mass. Gen. Laws. Ch. 212, § 4.

9.      This Court has personal jurisdiction over ePropelled because ePropelled's principal place of business is located within the Commonwealth of Massachusetts.

10.      Venue is proper pursuant to Mass. Gen. Laws Ch. 223, §§ 1 & 8 inasmuch as ePropelled's principal place of business is located within this county and a substantial number of the events giving rise to the Exro's claims occurred in this county.

2

## GENERAL ALLEGATIONS

### A.  Factual Background

11.    Exro is a clean technology company that designs and manufactures intelligent control solutions in power electronics.  Its products and technology expand the capabilities of electric motors, generators, and batteries and enable those applications to achieve more with less energy consumed.  In particular, Exro has pioneered an advanced motor control technology, the Coil Driver™, that expands the capabilities of electric powertrains by enabling intelligent optimization for efficient energy consumption.

12.    On information and belief, ePropelled designs intelligent motors, motor controllers, generators, and power management systems, that can be utilized, *inter alia*, in the aerospace, manned and unmanned aerial vehicles, electric vehicles, and pump markets.

13.    Exro and ePropelled have technology targeting the same market in the clean power electronics industry; and they specifically compete in the design, manufacture, and sale of intelligent motor technology, power management applications, and control solutions.

### B.  The Parties' Exchange of Correspondence

14.    On October 7, 2021, ePropelled reached out—for the first time—to Exro by sending a letter.   In it, ePropelled wrote that it wished to "bring to [Exro's] attention" that ePropelled believed that Exro held a patent, Patent No. 9,812,981 B2 (the "**'981  Patent**") that was similar to a patent held by ePropelled, Patent No. 7,382,103 (the "**'103 Patent**"), and asking Exro to "explain how [Exro's] Coil Driver™ technology is different to [ePropelled's] existing patent."  A copy of ePropelled's October 7, 2021 correspondence ("**ePropelled's October 7 Letter**") is attached as Exhibit "A."

15.    As support for its conclusion that the patents were "similar," ePropelled's October 7 Letter included a chart purporting to compare the two patents.  The chart contained side-by-side

purported concepts from each party's patent that were displayed with no information explaining their relevance or how a comparison of the two patents could possibly amount to patent infringement.

16.     ePropelled's October 7 Letter closed with an invitation for Exro to "explain how [its] Coil Driver™ technology is different to [ePropelled's] existing patent."

17.      On November 4, 2021, Exro responded to ePropelled's October 7 Letter through its counsel ("**Exro's November 4 Response**").  A copy of Exro's November 4 Response is attached as Exhibit "B."

18.     In Exro's November 4 Response, Exro stated that, while it was "investigating the claims in ePropelled's letter" and "respects valid and enforceable third-party patent rights," ePropelled's October 7 Letter simply did not "provide sufficient information for Exro to meaningfully investigate this matter and provide a substantive response." Exro's November 4 Response proceeded to note that ePropelled's October 7 Letter did not provide any analysis of the claims of either patent, but rather cited to a chart purporting to contain various information from each patent and put the onus on Exro to explain how Exro's "Coil Driver™ technology is different to [ePropelled's] existing patent."

19.     Exro's November 4 Response also specifically addressed various deficiencies in ePropelled's letter, including that it (1) did not include an infringement claim chart identifying how ePropelled believes that Exro's Coil Driver™ technology meets the limitations of ePropelled's patent claims; (2) failed to address ePropelled's understanding of the scope of ePropelled's patent claims, including those limitations that are drafted using means-plus-function language (governed by 35 U.S.C. § 112, ¶ 6) but appear to lack support of corresponding structure

in ePropelled's patent; and (3) failed to identify which "particular Exro product(s) ePropelled alleges to infringe [ePropelled's] patent and the specific features of each."

20.     Exro's November 4 Response concluded with a request that ePropelled provide the information identified by Exro—including a proper infringement claim chart—by a date certain so Exro could "investigate ePropelled's allegations and provide a substantive response."

21.     ePropelled responded four days later, on November 8, 2021. Rather than providing the requested information to enable Exro to engage in a meaningful investigation of its allegations, ePropelled provided a two-paragraph response directly from its counsel ("**ePropelled's November 8 Response**"). A copy of ePropelled's November 8 Response is attached as Exhibit "C." ePropelled's November 8 Response acknowledged Exro's November 4 Response, and clarified that ePropelled "has not accused Exro of infringement [and] has not conducted an infringement analysis." ePropelled's November 8 Response conceded that ePropelled had not provided an infringement claim chart, instead stating that it had provided "a chart showing the similarities between the parties' respective patents" and on that basis concluded that ePropelled had "already provided [Exro] with information sufficient for [its] own evaluation."

22.     Critically, ePropelled's November 8 Response did not address or engage with any of the substantive concerns raised by Exro's November 4 Response.

## C. ePropelled Blindsides Exro With Defamatory Press Release That is Expressly Contradicted by the Parties' Correspondence

23.     For over two months thereafter, Exro did not hear further from ePropelled, and in particular, ePropelled did not reach out further to discuss the substantive concerns set forth in Exro's November 4 Response.

24.     Instead, on January 24, 2022, ePropelled blindsided Exro by publishing—without warning—a press release to its website announcing that it had filed suit against Exro for patent

infringement in the District of Massachusetts (the "**ePropelled Press Release**").  A copy of the ePropelled Press Release is attached as Exhibit "D."  Critically, the ePropelled Press Release states as follows:

> ePropelled respects the intellectual property rights of others and will vigorously defend its own intellectual property. ***After proactively reaching out to Exro Technologies Inc. to discuss the issue with no response***, the company took legal action to protect ePropelled's Dynamic Torque SwitchingTM (eDTSTM) technology that is core to its business and the company has invested millions to develop and commercialize for more than a decade.

*Id.* (emphasis added.).

25.     ePropelled included Exro's stock ticker symbol in its Press Release, knowing full-well that its inclusion that would cause the press release to be picked up and connected to any search relating to Exro.

26.     The bolded statement in the press release excerpt above, hereinafter the "Defamatory Statement," was false when made.  Exro *did* respond to "the issue," *i.e.*, the intellectual property issues raised in ePropelled's October 7 Letter, in Exro's November 4 Response.  Indeed, Exro's November 4 Response directly engaged "the issue," raising substantive areas of concern with ePropelled's claims and identifying additional information needed from ePropelled in order to undertake its own analysis.  Critically, ePropelled's November 8 Response failed even to address—much less provide documentation concerning—the concerns expressed in Exro's November 4 Response, obviating any further reply and engagement from Exro.

27.     The Defamatory Statement is all the more troubling given that ePropelled's November 8 Response ***specifically acknowledged*** that Exro *did* respond to ePropelled's initial inquiry.  ePropelled's November 8 Response begins:  "This will respond on behalf of ePropelled to [Exro's] letter dated November 4, 2021."

28.     ePropelled's publication of the Defamatory Statement was clearly made with knowledge of its falsity and therefore constitutes reckless, intentional, willful, and malicious conduct.  It is clear that, through the ePropelled Press Release, ePropelled was intent on falsely portraying a market participant as nonresponsive, indifferent, or inactive in the face of allegations of patent infringement.

29.     Exro responded immediately to the ePropelled Press Release.  On January 25, 2022, Exro published its own press release, clarifying that "[c]ontrary to allegations made by ePropelled, Exro diligently investigated and promptly responded to ePropelled's inquiry.  Based on Exro's response, ePropelled then clarified that it was not accusing Exro of infringement and stated that it had not conducted an infringement analysis.  ePropelled made no further communication with Exro prior to filing suit."  A copy of Exro's January 25, 2022, press release is attached as Exhibit "E."

30.     In a blatant attempt to try to cover up its Defamatory Statement, ePropelled issued a second press release, dated January 27, 2022, which was titled "ePropelled Provides Complaint Details in Response to Exro Technologies Inc. Claims on Patent Infringement Lawsuit" ("**ePropelled's January 27 Press Release**," a copy of which is attached as Exhibit "F").  At the bottom of the third paragraph, ePropelled's January 27 Press Release states that "Exro Technologies Inc. did not respond with information sufficient to resolve the dispute, prompting ePropelled to file suit."  This statement—at the bottom of the press release—was not described as a "retraction," or any type of "clarification."   And it did nothing to clarify the falsity of the Defamatory Statement.  It also fails to provide the reader with important contextual information— for example, that Exro had *in fact* responded to ePropelled's initial letter, that Exro had, *in fact* provided substantive responses and concerns, that Exro had, *in fact*, sought further information from ePropelled, and that ePropelled, *in fact*, never provided any such information or

clarifications.  Indeed, ePropelled's January 27 Press Release also fails to explain to the reader that ePropelled even told Exro explicitly that it was ***not*** accusing Exro of patent infringement and had not conducted an infringement analysis.

31.      ePropelled's January 27 Press Release was too little too late, and the damage was already done.  ePropelled's January 27 Press Release was posted, tipped to, or picked up by multiple national outlets, including PRNewswire,[1] Bloomberg,[2] and Barron's.[3]

32.      Moreover, ePropelled's publication of the Defamatory Statement caused injury to Exro and its investors.  Exro's stock price fell over 27% in the next full trading day after ePropelled published the Defamatory Statement—from $1.79 on Friday, January 21, 2022, the last active trading day before ePropelled published the Defamatory Statement, to $1.31 on January 25, 2022.[4]

33.      The Defamatory Statement has also significantly damaged Exro's relationships with both current and prospective investors.  Indeed, investors have specifically reached out to Exro with concerns over the implication that Exro did not initially respond to ePropelled's accusations—an implication which ePropelled knew was patently false when made.

## COUNT I:  DEFAMATION

34.      Exro incorporates by reference each and every allegation set forth above as if fully recounted herein.

35.      ePropelled made false and defamatory written statements about Exro by publishing the Defamatory Statement in the ePropelled Press Release.  The ePropelled Press Release

---

[1] https://www.prnewswire.com/news-releases/epropelled-files-patent-infringement-lawsuit-against-exro-technologies-inc-301466767.html (last accessed on February 11, 2022)
[2] https://www.bloomberg.com/press-releases/2022-01-24/epropelled-files-patent-infringement-lawsuit-against-exro-technologies-inc (last accessed on February 11, 2022)
[3] https://www.barrons.com/articles/epropelled-files-patent-infringement-lawsuit-against-exro-technologies-inc-01643050983?mod=md_stockoverview_news (last accessed on February 11, 2022)
[4] https://www.marketwatch.com/investing/stock/exrof (last accessed February 11, 2022)

contained Exro's stock ticker which had the obvious and intended effect of drawing investor and public market attention.

36.     ePropelled published the Defamatory Statement with knowledge of its falsity. Specifically, ePropelled knew that Exro had responded to its October 7 Letter—indeed, ePropelled acknowledged this in its November 8 Response:  "[t]his will respond on behalf of ePropelled to [Exro's] letter dated November 4, 2021," a letter in which Exro responded to ePropelled's vague and meritless "allegations" and directly engaged with ePropelled.  Thus, ePropelled's publication of the Defamatory Statement, which it knew was false when made, amounts to reckless, intentional, willful, and malicious conduct.

37.     ePropelled's publication of the Defamatory Statement has injured Exro, including damage to its reputation and standing in the industry.

38.     The ePropelled Press Release was posted, tipped to, or picked up by multiple national outlets, including PRNewswire, Bloomberg, and Barron's, significantly harming Exro's professional reputation and reputation in the community as well as its credibility with investors and the market.

39.     Exro's stock price fell over 27% in the next full trading day after ePropelled published the Defamatory Statement—from $1.79 on Friday, January 21, 2022, the last active trading day before ePropelled published the Defamatory Statement, to $1.31 on January 25, 2022—and continues to fall.[5]

40.     The Defamatory Statement has significantly damaged Exro's relationships with both current and prospective investors.  Exro has had to expend time and resources managing investor concerns in light of the Defamatory Statement.

---

[5] https://www.marketwatch.com/investing/stock/exrof (last accessed February 11, 2022)

41.     ePropelled's Defamatory Statement has caused damage to Exro, in excess of $50,000, plus other costs, expenses and damages to be proven at trial.

### COUNT II – VIOLATION OF MASS. GEN. LAWS CH. 93A

42.     Plaintiff incorporates by reference each and every allegation set forth above as if fully recounted herein.

43.     Exro and ePropelled are each engaged in trade or commerce.

44.     As described in detail above, by making and publishing the Defamatory Statement in the ePropelled Press Release, ePropelled engaged in an unfair method of competition in violation of Mass. Gen. Laws Ch. 93A, §§ 2 & 11, by publishing false statements meant to defame or with the effect of defaming Exro, a competitor.

45.     ePropelled's  actions and practices set forth herein caused Exro injury and damage and said actions and practices were, on information and belief, willful or knowing and in violation of Mass. Gen. Laws Ch. 93A, §§2 & 11, which entitles Exro to double or treble damages, and its reasonable attorneys' fees.

46.     The events underlying the unfair methods, acts or practices detailed herein, which concern the publication of defamatory statements made from ePropelled's headquarters in Lowell, Massachusetts, primarily and substantially occurred within the Commonwealth of Massachusetts.

47.     ePropelled's violations of Mass. Gen. Laws Ch. 93A, §§ 2 & 11 have caused damage to Exro, in excess of $50,000, plus other costs, expenses, and damages to be proven at trial.

### Prayer for Relief

**WHEREFORE**, Plaintiff requests that this Court:

A.  Enter judgment in favor of Exro as to each Count of the Complaint;

B.  Award Exro its damages including attorneys' fees and costs, plus interest as allowed

by law;

C.  Award Exro double or treble damages pursuant to Mass. Gen. Laws Ch. 93A as to

Count II of the Complaint;

D.  Grant such further relief as is necessary and proper.

**Demand for Jury Trial**

Plaintiff, Exro, hereby demands a trial by jury.

COZEN O'CONNOR

Dated: February 15, 2022

_____

Wendy K. Venoit, Esq.
BBO #:  568657
*Attorneys for Plaintiff*
EXRO TECHNOLOGIES, INC.
101 Arch Street, 8th Floor
Boston, Massachusetts 02110
(617) 849-5002
wveniot@cozen.com

RECEIVED
2/15/2022

# Exhibit A



**The Future of Electric Propulsion**

Jonathan Ritchey
Chief Scientist and CTO
EXRO Technologies Inc.
12-21 Highfield Circle SE
Calgary, AB T2G5N6 Canada

7th October 2021

Dear Jonathan:

I write on behalf of ePropelled, Inc., a leading expert in magnetic engineering innovations that dramatically improve electric motor and generator efficiency for propulsion systems.

It has recently come to our attention that Exro Technologies is the assignee of U.S. Patent No. 9,812,981 B2, entitled, "Variable Coil Configuration System, Apparatus and Method" (the '981 patent"). The '981 patent issued on November 7, 2017, based on applications dating back to no earlier than September 3, 2009. According to your website (https://www.exro.com/technology/coil-driver) and on www.engineering.com, Exro's Coil Driver™ switches coils using a motor controller in a manner that appears to practice the '981 patent, producing the same results.

Please be advised that Exro's '981 patent claims cover the same invention disclosed and claimed in our U.S. patent No. 7,382,103 B2 (the '103 patent), which issued June 3, 2008, pre-dating the earliest application date for the '981 patent by more than a year. A copy of our '103 patent is enclosed, (which as you will note, shows an application date of 24 October 2003). As described and claimed in our '103 patent, motor controllers of the '981 patent electronically switch the motor windings between series and parallel in various combinations, effectively reconfiguring the windings dynamically (i.e. "on the fly"). For illustration purposes, the chart below compares the two patents.



ePROPELLED™

The Future of Electric Propulsion

| US7382103B2<br>(Electronics Products Limited/ePropelled Ltd) | US9812981B2<br>(EXRO Technologies) |
|---|---|
| **Date of Filing**: 24/10/2003<br>**Title**: Magnetic Gearing of Permanent Magnet Brushless Motors | **Date of Filing**: 03/08/2009<br>**Title**: Variable Coil Configuration System, Apparatus and Method |
| This invention relates to the magnetic gearing of permanent magnet brushless motors. | The invention relates to electric machines with coils or windings (e.g., generators, motors), and more particularly to systems, apparatus and methods that configure coils or windings of multistage electric machines. |
| Switching devices are disposed at opposite ends of each winding section and are arranged to connect each winding section in series and/or parallel with all other winding sections of the given phase. | Bridge rectifier along with semiconductor switches (e.g. Triacs) allow switching of series and parallel coils or windings. |
| Switch means is arranged to connect all of the winding sections of the given phase in series. | Bridge rectifier along with triacs are individually controlled by controller to enable series coil combinations. Triacs control the coils of an electric machine. |
| The switch means is arranged to connect some of the winding sections of the given phase in parallel. | The triacs are placed in appropriate states (e.g., ON, OFF) to arrange coils in a desired or commanded series/parallel arrangement. |
| The voltage applied to the winding sections of the given phase is pulse-width modulated. | Pulse-width modulated (PWM) switches are used to apply a variable DC voltage from the output bus to the coil connector. |
| The control means is adapted to vary the connection configuration of the winding sections whilst the motor is running, in accordance with time or an operating cycle or program. | Controller sends switching commands to triacs and/or relays. The triacs are placed in appropriate states (e.g., ON, OFF) to arrange coils in a desired or commanded series/parallel arrangement. |

We would like to bring this matter to your attention in-order for you to explain how the Coil Driver™ technology is different to our existing patent. If we don't hear from you within 15 days from the date of this letter, we plan to take this to the next step.

Kind Regards,

Dr Nabeel Shirazee

Encls. [copies of both patents]
cc: Nick Grewal, CEO
cc:  Darryl M. Woo, William J. Schnoor, Goodwin Procter LLP

ePropelled, Inc. ▶ 116 John Street, Suite 205 ▶ Lowell, MA 01852 USA ▶ 978-703-1350
info@ePropelled.com ▶ www.ePropelled.com

RECEIVED

2/15/2022

# Exhibit B



November 4, 2021

**Thomas J. Fisher**

Direct Phone   202-471-3430
tfisher@cozen.com

**VIA COURIER AND E-MAIL (DWOO@GOODWINLAW.COM)**

Mr. Darryl Woo
Goodwin Procter LLP
Three Embarcadero Center
28th Floor
San Francisco, CA  94111

**Re:     U.S. Patent No. 7,382,103 B2**

Dear Mr. Woo:

I write on behalf of Exro Technologies Inc. in response to ePropelled, Inc.'s letter from Dr. Nabeel Shirazee dated October 7, 2021.  Please direct all future correspondence concerning this matter to Cozen O'Connor because we represent Exro in this matter.

Exro is investigating the claims in ePropelled's letter concerning U.S. Patent No. 7,382,103 B2 ("the '103 patent").  Exro respects valid and enforceable third-party patent rights and has reviewed the '103 patent and its prosecution history.

ePropelled's letter does not provide sufficient information for Exro to meaningfully investigate this matter and provide a substantive response.

In particular, the letter summarily states that "Exro's '981 patent claims cover the same invention disclosed and claimed in [ePropelled's '103 patent]," but does not provide any analysis of the claims of either patent.  Instead, the letter provides a chart purporting to compare ePropelled's patent to Exro's patent, and requesting that Exro "explain how the Exro's Coil Driver™ technology is different to [ePropelled's] existing patent."

To the extent that ePropelled's allegation is that Exro's technology is covered by the '103 patent, please provide an infringement claim chart so that Exro can meaningfully investigate this matter. In doing so, please provide ePropelled's understanding of the scope of the '103 patent claims. For example, we note that there are a number of limitations in the claims of the '103 patent that are drafted using means-plus-function language that are governed by 35 U.S.C. § 112, ¶ 6. Based on our initial review of the '103 patent, a number of these terms are not supported by corresponding structure in the '103 patent specification.  As part of your claim chart, please include an identification of the structure in the '103 patent specification that ePropelled believes to correspond to the means-plus-function limitations.  In addition, please identify which particular Exro product(s) ePropelled alleges to infringe the '103 patent and the specific features of each.

Please provide the above-requested information by November 12, 2021, so that we can investigate ePropelled's allegations and provide a substantive response.

Mr. Darryl Woo
November 4, 2021
Page 2

_____

Sincerely,

COZEN O'CONNOR

By:      Thomas J. Fisher



2/15/2022

# Exhibit C



Darryl Woo

Goodwin Procter LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111

goodwinlaw.com
+1 415 733 6000

November 8, 2021

**VIA EMAIL (TFISHER@COZEN.COM)**

Thomas J. Fisher
Cozen O'Connor
1200 19th Street, NW
Washington, DC 20036

**Re:   U.S. Patent No. 7,382,103 B2**

Dear Mr. Fisher:

This will respond on behalf of ePropelled to your letter dated November 4, 2021.

Contrary to the positions expressed in your letter, ePropelled has already provided your client with information sufficient for your client's own evaluation, including a chart showing the similarities between the parties' respective patents.  Furthermore, Exro is on notice of ePropelled's '103 patent and its priority date pre-dating, by more than a year, the earliest application date for Exro's '981 patent. Consistent with your representation that "Exro respects valid and enforceable third-party patent rights," Exro should refrain from infringing ePropelled's '103 patent.

ePropelled, however, has not accused Exro of infringement, has not conducted an infringement analysis, and neither does it have any obligation to do that or provide any construction of its patent's claims.  Rather, we will leave that up to you to evaluate and advise your client as appropriate.

Sincerely,

Darryl M. Woo

DW

RECEIVED

2/15/2022

# Exhibit D

Case 1:22-cv-10844-MPK Document 1 Filed 03/04/22 Page 22 of 33



# ePropelled Files Patent Infringement Lawsuit Against Exro Technologies Inc.

**LOWELL, Mass. | January 24, 2022 — ePropelled**, the Massachusetts-based technology company that offers leading-edge electric propulsion systems, **filed** a patent infringement lawsuit against Exro Technologies Inc. (TSX: EXRO; OTCQB: EXROF) on January 21, 2022, in the U.S. District Court for the District of Massachusetts.

A leading expert in magnetic engineering innovations that dramatically improve electric motor and generator efficiencies for propulsion systems in many industries, ePropelled respects the intellectual property rights of others and will vigorously defend its own intellectual property. After proactively reaching out to Exro Technologies Inc. to discuss the issue with no response, the company took legal action to protect **ePropelled's Dynamic Torque Switching$^{TM}$ (eDTS$^{TM}$)** technology that is core to its business and the company has invested millions to develop and commercialize for more than a decade.

The company's eDTS$^{TM}$ technology allows an electric motor to provide high torque at low speeds without drawing high current from the batteries, operate at high speeds without deep field weakening, and reconfigure windings using switches in parallel, series, and combinations on the fly (while operating). A revolutionary advancement for the electric vehicle (EV) market, eDTS$^{TM}$ delivers a significant improvement in power efficiency and performance, which can translate into, for example, a net reduction in EV cost through smaller battery packs, extended driving range, or a combination of the two.

Recognizing that its intellectual property are important company assets, ePropelled maintains a worldwide intellectual property portfolio of patents and trademarks, including U.S. 7,382,103, relating to its eDTS$^{TM}$ technology.

**About ePropelled**

ePropelled designs intelligent motors, motor controllers, generators, and power management systems. Our technology helps reduce energy consumption and improve system efficiency at a lower cost in the aerospace, manned and unmanned aerial vehicles, electric vehicles, and pump markets. We are a leader in magnetics engineering, and our patented technology innovations are used in the air, on the road, and on water, defining the future of electric propulsion.

ePropelled has offices in the United States, Europe, and India and collaborates with manufacturers of all types and sizes around the world. For more information, please visit **epropelled.com.**

**Contact:**

Kim Schofield, Corporate Marcom Manager
+1-603-234-4000
**kim@ePropelled.com**

## CONTACT

**Call us**
**+1 978-703-1350**

**Mail us**
**info@epropelled.com**

### QUICK LINKS

About Us
News
Contact

Careers
Blog

### FOLLOW US

  

Copyright ©2021 ePropelled. **Privacy & Cookie Policy**

RECEIVED

2/15/2022

# Exhibit E



EXRO  $1.42

News   Investors   Technology   About   Contact

NEWS  »  PRESS RELEASE

# Exro Stands with Confidence Against Patent Infringement False Claims

January 25, 2022

- Exro recognizes the importance of intellectual property, actively protects its own IP and respects other companies' valid IP rights.

- Exro takes exception to ePropelled Inc.'s unmerited patent infringement lawsuit and its inaccurate statement that Exro did not respond to ePropelled's inquiry to Exro concerning ePropelled's patent.

- Exro will investigate the allegations set forth in the complaint,

**Calgary, Alberta (January 25, 2022)** – Exro Technologies Inc. (**TSX: EXRO, OTCQB: EXROF**) (the "Company" or "Exro"), a leading clean technology company that has developed a new class of power electronics for electric motors and batteries, is issuing the following statement in response to the press release issued by ePropelled Inc. on January 24, 2022, concerning a patent infringement lawsuit it filed against the Company on January 21, 2022.

As a technology company, Exro recognizes the importance of intellectual property ("IP"), and actively strives to protect and maintain its IP rights, which includes securing patents covering its technology both in the United States and internationally. Exro also steadfastly respects other companies' valid IP rights.

Contrary to allegations made by ePropelled, Exro diligently investigated and promptly responded to ePropelled's inquiry. Based on Exro's response, ePropelled clarified that it was not accusing Exro of infringement and stated that it had not conducted an infringement analysis. ePropelled made no further communication with Exro prior to filing suit.

"Not only does Exro respect other companies' intellectual property rights, but we are also incredibly confident in our ability to defend our technology," said Exro CEO Sue Ozdemir. "While we are disappointed in both the unmerited patent infringement lawsuit and the false claims made by ePropelled, we are thankful for the support we have received from the Exro community. We will continue focusing on our business strategy that demonstrates how Exro's ability to continuously innovate will solidify its position in the electric mobility market.

As it did in response to ePropelled's inquiry, Exro will investigate the allegations set forth in the complaint, and vigorously defend its technology.

## About Exro Technologies Inc.

Exro is a clean technology company pioneering intelligent control solutions in power electronics to help solve the most challenging problems in electrification. Exro has developed a new class of control technology that expands the capabilities of electric motors, generators, and batteries. Exro enables the application to achieve more with less energy consumed.

Exro's advanced motor control technology, the Coil DriverTM, expands the capabilities of electric powertrains by enabling intelligent optimization for efficient energy consumption. Exro is working with many partners from all over the world to bring their technology to the electric mobility industries and beyond.

For more information visit our website at www.exro.com.

Visit us on social media @exrotech.


## Contact Information

Investor inquiries: ir@exro.com

Canada investors: Jake Bouma at 604–317–3936

United States investors: Vic Allgeier at 646–841–4220

Media inquiries: media@exro.com


## CAUTIONARY STATEMENT REGARDING FORWARD LOOKING STATEMENTS

This news release contains forward-looking statements and forward-looking information (together, "forward-looking statements") within the meaning of applicable securities laws. All statements, other than statements of historical facts, are forward-looking statements.

terminology such as "plans", "expects", "estimates", "intends", "anticipates", "believes" or variations of such words, or statements that certain actions, events or results "may", "could", "would", "might", "will be taken", "occur" or "be achieved". Forward looking statements involve risks, uncertainties and other factors disclosed under the heading "Risk Factors" and elsewhere in the Company's filings with Canadian securities regulators, that could cause actual results, performance, prospects and opportunities to differ materially from those expressed or implied by such forward-looking statements. Although the Company believes that the assumptions and factors used in preparing these forward-looking statements are reasonable based upon the information currently available to management as of the date hereof, actual results and developments may differ materially from those contemplated by these statements. Readers are therefore cautioned not to place undue reliance on these statements, which only apply as of the date of this news release, and no assurance can be given that such events will occur in the disclosed times frames or at all. Except where required by applicable law, the Company disclaims any intention or obligation to update or revise any forward-looking statement, whether as a result of new information, future events or otherwise.

This information is qualified in its entirety by cautionary statements and risk factor disclosure contained in filings made by the Company with the Canadian securities regulators, including the Company's annual information form for the financial year ended December 31, 2020, and financial statements and related MD&A for the financial year ended December 31, 2020, filed with the securities regulatory authorities in certain provinces of Canada and available at www.sedar.com. Should one or more of these risks or uncertainties materialize, or should assumptions underlying the forward-looking information prove incorrect, actual results may vary materially from those described herein as intended, planned, anticipated, believed, estimated or expected. Although the Company has attempted to identify important risks, uncertainties and factors which could cause actual results to differ materially, there may be others that cause

does not intend, and does not assume any obligation, to update this forward–looking information except as otherwise required by applicable law.

Neither the Toronto Stock Exchange nor the Investment Industry Regulatory Organization of Canada accepts responsibility for the adequacy or accuracy of this press release.

# Stay One Step Ahead

Be the first to get updates on everything Exro.

First Nar        Last Nan        Email Ad                    GET ACCESS



| News | Events | About Us |
| Investors | Technology | Partners |
| Stock | Coil Driver | Suppliers |

Media

Leadership & Governance

Analyst Coverage

Battery Control System

FAQs

Contact Us

Careers

© Exro Technologies Inc. 2022. All rights reserved.

Privacy Policy    Terms & Conditions

 

RECEIVED
2/15/2022

# Exhibit F

Case 1:22-cv-10344-MPK Document 1 Filed 03/04/22 Page 32 of 33

# ePropelled Provides Complaint Details in Response to Exro Technologies Inc. Claims on Patent Infringement Lawsuit



**LOWELL, Mass. | January 27, 2022 – ePropelled**, the Massachusetts-based technology company that offers leading-edge electric propulsion systems, today announced further details to the patent infringement lawsuit the company **filed** against Exro Technologies Inc. (TSX: EXRO, OTCQB: EXROF) on January 21, 2022.

In response to the press release issued by Exro Technologies Inc. on January 25, 2022, in which Exro Technologies Inc. called ePropelled's patent litigation, "meritless," ePropelled provides this **link to the Complaint**.

Before filing suit, ePropelled notified Exro Technologies Inc. that ePropelled's Dynamic Torque Switching™ technology, which allows electric vehicle (EV) motors to switch between parallel and in series configurations while operating, was patented by U.S. Patent No. 7,382,103, and that Exro Technologies Inc.'s Coil Drive System™ fell within the scope of the patent. Exro Technologies Inc. did not respond with information sufficient to resolve the dispute, prompting ePropelled to file suit.

**About ePropelled**

ePropelled designs intelligent motors, motor controllers, generators, and power management systems. Our technology helps reduce energy consumption and improve system efficiency at a lower cost in the aerospace, manned and unmanned aerial vehicles, electric vehicles, and pump markets. We are a leader in magnetics engineering, and our patented technology innovations are used in the air, on the road, and on water, defining the future of electric propulsion.

ePropelled has offices in the United States, Europe, and India and collaborates with manufacturers of all types and sizes around the world. For more information, please visit **epropelled.com.**

**# # #**

**Contact:**

Kim Schofield, Corporate Marcom Manager
+1-603-234-4000
**kim@ePropelled.com**

## CONTACT

📞 **Call us**

**+1 978-703-1350**

✉️ **Mail us**

**info@epropelled.com**

### QUICK LINKS

About Us          Careers

News              Blog

Contact

### FOLLOW US

 

Copyright ©2021 ePropelled.    **Privacy & Cookie Policy**